
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

DAVID A. JACKSON-MACKAY,

    Plaintiff,

    VS.

DAVID RUSSELL,

PLATTE COUNTY SHERIFF'S
DEPARTMENT CAPTAIN in his official
capacity also known as David Russell,

PLATTE COUNTY SHERIFF, in his
official capacity also known as Clyde
Harris,

CLYDE HARRIS,

PLATTE COUNTY SHERIFF'S
DEPARTMENT SERGEANT, in his
official capacity, also known as Michael
McDonald,

MICHAEL MCDONALD,

    Defendant,

Case No. 22-CV-00103-ABJ

## ORDER GRANTING MOTIONS TO DISMISS

This matter is before the Court on pro se Plaintiff, David A. Jackson-Mackay's,

prisoner civil rights complaint pursuant to 42 U.S.C. § 1983 [ECF 3], the official capacity

defendants' motion to dismiss [ECF 9], and the individual capacity defendants' motion to

dismiss [ECF 11]. The Court having considered the motions, responses, replies, and

1

being otherwise fully advised, finds the motions should be granted and Mr. Jackson-Mackay's complaint dismissed.

## BACKGROUND

Mr. Jackson-Mackay initially filed his complaint in the State of Wyoming's Eighth Judicial District. [ECF 3] The Defendants removed the case to federal court. [ECF 1] In his Complaint, Mr. Jackson-Mackay asserts Fourteenth Amendment Due Process and Eighth Amendment Equal Protection violations, as well as a failure to supervise claim. [ECF 3 pp. 8-16] He asserts he entered defendants' custody on December 7, 2021 pursuant to a contract with the United States Marshals Service. [ECF 3 p. 3 ¶ 1] He contends Defendant McDonald entered G-unit on January 10, 2022 to address another detainee's complaint. When Defendant McDonald entered the unit, multiple detainees, including Mr. Jackson-Mackay, confronted him about various issues. [ECF 3 p. 4 ¶4 ] Mr. Jackson-Mackay states he asked Defendant McDonald why he had lied to Plaintiff about a kiosk restriction. [ECF 3 p. 4 ¶ 5] Plaintiff contends Defendant McDonald responded by yelling at him while he continued to confront Defendant McDonald. [ECF 3 p. 4 ¶ 5] Mr. Jackson-Mackay asserts that during the confrontation Defendant McDonald asked him "do you want to lock down?" Mr. Jackson-Mackay responded "no." [ECF 3 p. 4 ¶ 6] At this time, several other detainees began yelling at Defendant McDonald that they would not lock down and Defendant McDonald left the unit and secured the exit door. [ECF 3 p. 4 ¶ 6]

Shortly after Defendant McDonald left the unit, Mr. Jackson-Mackay logged into the electronic kiosk which is used to submit internal requests, submit medical inquiries

and grievances, visit remotely with loved ones, and to access the law library. When he logged in, Mr. Jackson-Mackay received a notice that the facility had restricted his account. [ECF 3 p. 4 ¶ 7] Immediately after learning the defendants had restricted his account, Mr. Jackson-Mackay filed a written inquiry asking why his account was restricted. [ECF 3 p. 5 ¶ 9] Several hours later, Defendant McDonald returned to the unit and gave Mr. Jackson-Mackay a typed response which explained Mr. Jackson-Mackay had committed a Class III Rule Violation because he "refused an order to lock down." [ECF 3 p. 5 ¶ 10] Mr. Jackson-Mackay contends Defendant McDonald acted as the charging employee and hearing officer and imposed the punishment. He further asserts the report by Defendant McDonald states he refused an impartial hearing when, in fact, no hearing was given. [ECF 3 p. 5 ¶ 11] The report imposed a punishment of no telephone, no visitation, no commissary, and blocked kiosk access for seven days. [ECF 3 p. 5 ¶ 12] Mr. Jackson-Mackay also asserts he requested a copy of the Platte County Detention Center's (PCDC) inmate disciplinary policy at this time. [ECF 3 p. 6 ¶ 15]

In response, Mr. Jackson-Mackay filed two grievances—the first regarded the false report and the second involved the denial of a disciplinary hearing. [ECF 3 pp. 5-6 ¶ 13] Mr. Jackson-Mackay asserts Defendant McDonald instructed Sergeant Mark Sutton to respond to the grievances—he did so, denying any wrongdoing. [ECF 3 p. 6 ¶13] On January 11, 2022, Mr. Jackson-Mackay filed a grievance regarding the false report and appealed the denial of his grievance about the denial of his disciplinary hearing. [ECF 3 p. 6 ¶ 14] Mr. Jackson-Mackay contends Defendant Russell responded to the grievances and defended Defendant McDonald's conduct. [ECF 3 p. 6 ¶14] Defendant Russell also

responded to Mr. Jackson-Mackay's prior request for a copy of the disciplinary policy and told him he could request a disciplinary appeal form—which Plaintiff asserts did not address his request. [ECF 3 p. 6 ¶ 16]

Mr. Jackson-Mackay appealed the January 10th, grievance about the false report on January 11, 2022. [ECF 3 p. 6 ¶ 17] Mr. Jackson-Mackay contends Defendant Russell responded to the appeal by saying he "should not have inserted yourself into another inmates[] medical issue" and upheld the report. [ECF 3 p. 6 ¶17] Mr. Jackson-Mackay mailed a letter to Defendant Harris on January 13, 2022, complaining about Defendants McDonald and Russell. [ECF 3 pp. 6-7 ¶ 18] Plaintiff complains Defendant Harris did not respond to his letter. [ECF 3 p. 7 ¶ 17]

Mr. Jackson-Mackay contends twelve detainees were involved in the original dispute, but he was the only one disciplined. He asserts this demonstrates retaliation by Defendant McDonald. [ECF 3 p. 7 ¶ 19] He further argues Defendants McDonald and Russell repeatedly treated him differently than other inmates. [ECF 3 p. 7 ¶ 20] Mr. Jackson-Mackay argues Defendant Harris knew of Defendant Russell's and Defendant McDonald's unlawful conduct but did nothing to correct it. [ECF 3 p. 7 ¶ 21] He further argues the defendants were repeatedly informed their conduct was unlawful and unconstitutional but they failed to cease their behavior. [ECF 3 p. 7 ¶ 22] Mr. Jackson-Mackay contends the defendants' conduct was malicious and vindictive in nature and planned only to harm the plaintiff. He asserts the defendants knew or should have known that their conduct was unconstitutional and that they were put on notice that Mr. Jackson-Mackay was entitled to a fair hearing but refused to provide one. [ECF 3 p. 7 ¶¶ 23-25]

4

Mr. Jackson-Mackay asserts two constitutional violations. First, he alleges the defendants violated his Fourteenth Amendment right to Due Process of Law. [ECF 3 p. 8] He contends Defendant McDonald violated his constitutional right to due process by denying him a fair and impartial disciplinary hearing and Defendants Harris and Russell did so by upholding the denial of a hearing. [ECF 3 p. 8 ¶¶ 2-3] Plaintiff asserts Defendants Russell and Harris are responsible because Defendant Russell is Defendant McDonald's immediate supervisor and Defendant Harris is Defendant Russell's supervisor. [ECF 3 p. 9 ¶ 6, p. 12 ¶ 20] He contends both were given the opportunity to correct his Defendant McDonald's unlawful actions but failed to do so. [ECF 3 p. 9 ¶ 6]

Mr. Jackson-Mackay denies the allegations in the report written by Defendant McDonald and argues the punishment was overly harsh. [ECF 3 p. 9 ¶¶ 8-9, p. 12 ¶ 20] Plaintiff contends he could not be held responsible for the alleged violation, even if he did commit it, because the defendants did not provide him or the other inmates with advanced notice of the rules, policies procedures. [ECF 3 p. 9-10 ¶¶ 10-11] Mr. Jackson-Mackay argues Defendant McDonald singled him out and acted in a harassing and retaliatory manner toward him throughout his stay at the PCDC. [ECF 3 pp 10-11 ¶¶ 14-17] He asserts another PCDC employee confirmed there was no legitimate reason for a block on December 31, 2021. [ECF 3 p. 11 ¶16-18] Mr. Jackson-Mackay contends he lost forty-five days of good time because of Defendants' actions. [ECF 3 p. 12 ¶ 21]

Second, Mr. Jackson-Mackay alleges defendants violated his Eighth Amendment Right to Equal Protection. Mr. Jackson-Mackay argues McDonald, Harris, and Russell did not treat him similarly to other inmates who were similarly situated. [ECF 3 p. 13 ¶ 3]

He asserts other inmates were involved in the confrontation with Defendant McDonald, but he was the only one punished. He contends this demonstrates that he was targeted by Defendant McDonald and treated unfairly. [ECF 3 p. 13 ¶¶ 3-7]

Third, he argues Defendant Harris failed to supervise Defendants McDonald and Russell. [ECF 3 p. 14-16] Mr. Jackson-Mackay asserts Defendant Harris is the final decisionmaker regarding the PCDC and he notified Defendant Harris multiple times about jail issues and conditions. [ECF 3 p. 14-15 ¶¶ 47] He contends Defendant Harris never responded to his complaints and concerns and failed to act to correct Defendants McDonald's and Harris' unconstitutional conduct. [ECF 3 p. 15 ¶ 10-12] He further alleges Defendant Harris failed to train Defendants McDonald and Russell. [ECF 3 p. 15 ¶ 13] For relief, Mr. Jackson-Mackay asserts punitive and compensatory damages against each defendant, declaratory relief stating the disciplinary report was invalid and having it removed from his record, reversal of the loss of good time credits, and costs and fees for this case. [ECF 3 pp. 17-18 ¶¶ 1-6]

## STANDARD OF REVIEW

Both the Official and Individual Capacity Defendants moved to dismiss Mr. Jackson-Mackay's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a 12(b)(6) motion to dismiss, a plaintiff's complaint must allege sufficient facts 'to state a claim to relief that is plausible on its face.'" *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1266 (10th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court does not look to or weigh the evidence, but rather determines whether the plaintiff's complaint sufficiently states a claim for which relief can be granted. *Strauss*, 951 F.3d at 1266. The Court accepts "all well-pled factual allegations as true" and views them "in the light most favorable to the nonmoving party." *Id.* (quoting *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010)). However, "conclusory allegations without supporting factual averments are insufficient to state a claim on upon which relief can be based." *Bellmon*, 935 F.2d at 1109-10.

We liberally construe the filings of pro se litigants and hold them to a less stringent standard than those drafted by attorneys. *United States v. Hald*, 8 F.4th 932, 940, n. 10 (10th Cir. 2021). However, "it is not . . . the 'proper function of the district court to assume the role of advocate for the pro se litigant.'" *Rigler v. Lampert*, 248 F.Supp.3d 1224, 1232 (D. Wyo. 2017) (quoting *Hall v. Bellmon*, 935 F. 2d 1106, 1110 (10th Cir. 1991)).

## I.     *Official capacity defendants' motion to dismiss [ECF 9]*

Defendants, David Russell, Michael McDonald, Clyde Harris, in their official capacities, and the Platte County Detention Center moved this Court to dismiss Mr. Jackson-Mackay's claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and declare his lawsuit is frivolous under 28 U.S.C. § 1915(g). [ECF 9] First, the Official Capacity Defendants McDonald and Russell assert they cannot be held liable because they are not final policymakers. They further contend Mr. Jackson-Mackay's complaint alleges that Defendants McDonald and Russell followed the policies made by the final

decision maker, Defendant Harris. [ECF 10 pp. 8-9] Additionally, they assert Mr. Jackson-Mackay was not entitled to earn good time because he was a pretrial detainee, and therefore his claim for 45 days of lost good time credits is impossible. [ECF 10 p. 3]

Second, the Official Capacity Defendants argue Mr. Jackson-Mackay fails to state a plausible Eighth Amendment claim. They assert that losing kiosk privileges for seven days falls far short of the conduct necessary to state a plausible Eighth Amendment claim. [ECF 10 p. 9] Third, the Official Capacity Defendants argue Mr. Jackson-Mackay cannot plausibly state an Equal Protection claim. They argue Plaintiff failed to allege facts demonstrating that he was similarly situated to the other inmates in his pod or facts showing that Defendant McDonald's actions were irrational. [ECF 10 p. 9]

Next, the Official Capacity Defendants argue that the sanction imposed for Mr. Jackson-Mackay's Class III violation is not punishment, or if it is punishment, it is *a de minimis* sanction that does not require a Due Process hearing. [ECF 10 p. 10] They further argue that the PCDC's grievance procedure provided an adequate post-deprivation remedy. [ECF 10 p. 10] Finally, the Official Capacity Defendants argue the official capacity claims must be dismissed because Mr. Jackson-Mackay cannot prove a constitutional violation. [ECF 10 p. 11]

In response, Mr. Jackson-Mackay argues, first, that the Court is without authority to declare the case frivolous under § 1915(g) because he filed this case in state court and Defendants removed the case to federal court and paid the filing fee. Thus, he is not proceeding in this case in forma pauperis and § 1915(g) is inapplicable. [ECF 14 p. 2 ¶ 5] Next, Mr. Jackson-Mackay argues he was eligible to earn good time because, while he

8

was at PCDC as a federal pretrial detainee, he was also serving a state sentence of "not less than three years and not more than five years." [ECF 14 p. 3]

Mr. Jackson-Mackay further argues he was entitled to a due process hearing before being punished for a violation. He contends the punishment was not minimal and the "total disconnect from the outside world, including from his attorney with pending charges, was unconstitutional." [ECF 14 p. 4] He asserts that Defendant McDonald's actions were irrational, and he maintains he did not violate any rules and therefore the discipline was improper.

In reply, the Official Capacity Defendants withdrew their request that the Court declare Mr. Jackson-Mackay's case frivolous under § 1915(g). [ECF 15 p.2] Next, they argue Mr. Jackson-Mackay argued in his complaint that he was "at all times" a pretrial detainee, but in his response argues he was a sentenced prisoner. The Official Capacity Defendants assert different Due Process standards apply to pretrial detainees and sentenced prisoners and, as a sentenced prisoner, Mr. Jackson-Mackay must meet a higher bar to prove a constitutional violation. [ECF 15 p.p. 3-4] Defendants argue that, under either standard, Mr. Jackson-Mackay has failed to state a claim for which relief can be granted. [ECF 15 pp. 5-6] Finally, the Official Capacity Defendants argue that a county sheriff cannot be held liable where his subordinates did not commit a constitutional violation. [ECF 15 p. 5]

## A. Due Process

"Due process requires that a pretrial detainee not be punished prior to a lawful conviction." *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005)

(citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The government may submit pretrial detainees to "the conditions and restrictions of incarceration so long as those conditions and restrictions do not amount to punishment." *Id.* Courts look to the purpose of the condition or restriction to determine whether it counts as a punishment. *Id.* The Supreme Court's ruling in *Bell* "does not mean . . . pretrial detainees are free to violate rules with impunity. . . What it does mean, however, is that before . . . a pretrial detainee[] is punished for violating a jail rule, there must be a due process hearing." *Jacoby v. Baldwin County*, 835 F.3d 1138, 1348 (11th Cir. 2016); *see also Hubbard v. Nestor*, 830 Fed.Appx.574, 583 (10th Cir. 2020) (unreported) (quoting *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013)).

However, that is not the end of the story. As Mr. Jackson-Mackay points out in his response to the Official Capacity Defendants' Motion to Dismiss, he is a convicted state prisoner serving his state sentence. [ECF 14 p. 3 ¶ 6]; *see also, USA v. Jackson*, 21-CR-00087-NDF, ECF 75 pp 40:23-41:8 (D. Wyo. May 25, 2022). Because Mr. Jackson-Mackay was a convicted state prisoner at the time he was awaiting trial on his federal charges, he does not qualify as a pretrial detainee subject to the protections of *Bell*. 28 C.F.R. § 551.101(a)(3) ("For the purpose of this rule, an inmate in a status described in paragraph (a) introductory text, (a)(1), or (a)(2) of this section and who is at the same time serving a state or federal sentence is not considered a pretrial inmate."); *Benjamin v. Fraser*, 264 F.3d 175, 188 n. 11 (2nd Cir. 2001); *Laza v. Reish*, 84 F.3d 578, 580 (2nd Cir. 1996) (Prisoner awaiting trial on federal charges was not pretrial detainee and

therefore not entitled to *Bell* protections because he was a convicted state prisoner serving a state sentence).

While the Fourteenth Amendment's protections apply to prison inmates, "their due process rights are defined more narrowly." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005).

> The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests is at stake. A liberty interest may arise from the Constitution itself . . . or from an expectation or interest created by state laws or policies.

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court determined "that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty or property interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (quoting *Sandin v. Connor*, 415 U.S. 472, 484 (1995)). Conditions or regulations that "inevitably affect the duration" of a prisoner's sentence also implicate Due Process protections. *Sandin*, 415 U.S. at 487.

Here, the disciplinary sanction does not implicate a protected liberty interest. Mr. Jackson-Mackay asserts the Official Capacity Defendants were required to provide him with a hearing prior to instituting the kiosk restriction. However, because Mr. Jackson-Mackay was a convicted state prisoner, he does not qualify as a pretrial detainee and was not entitled to *Bell*'s protections.

Second, Mr. Jackson-Mackay asserts he has a protected liberty interest because the disciplinary sanction inevitably affected the duration of his sentence because he lost good time credits. Where good time credits are mandatory, inmates have a liberty interest in those credits. *Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006). "However, where, as here, the credits are discretionally awarded, 'the defendants have not deprived [the inmate] of any earned time to which he was *entitled*' and thus no liberty interest is involved." *Id.* The Tenth Circuit previously has recognized "[n]either Wyoming law nor WDOC prison policies and procedures create a liberty interest in earning good time credits." *Chapman v. Lampert*, 711 Fed.Appx. 455, 458 (10th Cir. 2017). Thus, because the award of good-time credits in Wyoming is discretionary, Mr. Jackson-Mackay had no liberty interest in those credits.

Third, the Tenth Circuit repeatedly has held in unpublished opinions that "restrictions on inmate's telephone use, property possession, visitation and recreation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life to constitute protected liberty interests." *Marshall v. Morton*, 421 Fed.Appx. 832, 838 (10th Cir. 2011) (unpublished); *see e.g.*, *Rackley v. Blevins*, 596 Fed. Appx. 620, 624 (10th Cir. 2014) (holding plaintiff could not show a constitutionally protected liberty interest in visitation privileges) (unpublished), *Cleveland v. Martin*, 590 Fed.Appx. 726, 732 (10th Cir. 2014) (unpublished) (finding no liberty interest in visitation). Here, Mr. Jackson-Mackay's claimed deprivation is even less than those discussed in the above listed cases because the weeklong restriction in his kiosk privileges only limited his electronic communication and electronic visitation

privileges—regular mail and in-person visitation remained available to Mr. Jackson-Mackay. *See* ECF 12 ex. 4. Mr. Jackson-Mackay did not have a liberty interest in access to the kiosk. Therefore due process was not implicated, and no hearing was necessary—he has failed to state a claim for which relief can be granted.

## B. Equal Protection[1]

The Equal Protection Clause requires that similarly situated people be treated alike. *A.M. v. Holmes*, 830 F.3d 1123, 1166 (10th Cir. 2016) (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)). Usually, cases addressing the Equal Protection Clause concern classes of people. *Id.* However, sometimes it focuses on an individual, or "class-of-one." *Id.* In *Village of Willowbrook v. Olech*, the Supreme Court held that a plaintiff may state a "class-of-one" Equal Protection claim by alleging he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. 562, 564. The Tenth Circuit has "approached class-of-one claims with caution, 'wary of turning even quotidian exercises of government discretion into constitutional causes.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (quoting *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1210 (10th Cir. 2006)). To succeed "on this theory, a plaintiff must first establish that others, similarly situated in every material respect were treated differently. A plaintiff must then show this difference in treatment was without rational basis, that is,

---

[1] Mr. Jackson-Mackay refers to his second claim as an Eighth Amendment Equal Protection claim. The Fourteenth Amendment, not the Eighth, provides Equal Protection protections. The Court could allow amendment or dismiss without prejudice and permit Mr. Jackson-Mackay to refile and allege the correct constitutional amendment. However, the Court addresses the merits because amendment would be futile.

the government action was irrational and abusive, and wholly unrelated to any legitimate state activity." *Id.* (internal quotations and citations omitted).

The Tenth Circuit highlighted the first element recognizing there is "a 'substantial burden' that plaintiffs demonstrate others 'similarly situated in all material respects' were treated differently." *Kan. Penn Gaming*, 656 F.3d at 1217. It further "emphasize[d] [its] strict reading of this element because it addresses the main concern with the class-of-one theory—that it will create a flood of claims in that area of government action where discretion is high and variation is common." *Id.* at 1218.

Mr. Jackson-Mackay's class-of-one Equal Protection claim fails because he has failed to plausibly allege that the other inmates in his unit were similarly situated in every material respect. Mr. Jackson-Mackay contends the other inmates in his unit were similarly situated in every material respect because they also were housed in G-Unit and yelled at Defendant McDonald. However, the face of his Complaint demonstrates the other inmates were not similarly situated in every material respect. Mr. Jackson-Mackay alleges that during the course of the altercation with Defendant McDonald, Defendant McDonald asked only him if he wanted to lockdown—not the other inmates—and Mr. Jackson-Mackay said no. [ECF 3 p 4 ¶¶ 5-6] This is a material difference because it was a direct interaction between Mr. Jackson-Mackay and Defendant McDonald and the basis for the kiosk restriction. The kiosk restriction was not based on the general altercation during which the residents of G-Unit confronted Defendant McDonald. [ECF 3 p. 5 ¶¶ 9-10] Mr. Jackson-Mackay has failed to state a plausible class-of-one Equal Protection claim.

## C. Failure to Supervise

"The Supreme Court has made it clear that 'a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Waller v. City and County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Rather, the government entity "may only be held liable 'when execution of a government's policy of custom, whether made by its lawmakers or by those whose edicts or acts may fairly said to represent official policy, inflicts the injury.'" *Id.* (quoting *Monell*, 436 U.S. at 694). A municipal policy or custom may fall under one of five categories:

> (1) A formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Id.* (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). Where, as here, the plaintiff claims his injury was caused by the failure to adequately train or supervise employees, "a plaintiff 'must demonstrate that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences.'" *Id.* at 1284 (quoting *Bd. Of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

Mr. Jackson-Mackay's failure to supervise claim fails, however, because even if the County failed to supervise Defendants McDonald and Russell, it "cannot be held liable where, as here, the officers did not commit a constitutional violation." *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (quoting *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155-56 (10th Cir. 2001)).  As discussed above, Mr. Jackson-Mackay failed to state a plausible claim for either a Due Process or Equal Protection violation.  Because he has failed to state a claim for a constitutional violation, his failure to supervise claim also fails.  Mr. Jackson-Mackay's official capacity claims are dismissed.

## II.     *Individual Capacity Defendants' Motion to Dismiss [ECF 11]*

The Individual County Defendants argue Mr. Jackson-Mackay's complaint fails to state a sufficiently serious deprivation to constitute a plausible Due Process violation. [ECF 12 pp. 6-8] They further contend Mr. Jackson-Mackay did not plead any facts to support a plausible claim that the conditions posed a substantial risk of harm. [ECF 12 p. 8] Second, the Individual County Defendants argue Mr. Jackson-Mackay failed to state a plausible claim relating to the loss of his good time credits. They assert Mr. Jackson-Mackay is ineligible to earn good time credits as a pretrial detainee.  They also argue that they have no control over the application of good time credits because those determinations are made by the Bureau of Prisons later.  [ECF 12 pp. 9-10] Third, the Individual Capacity Defendants argue Mr. Jackson-Mackay has failed to plead a plausible procedural due process violation regarding his kiosk restriction.  They contend that the kiosk restriction was not punishment and therefore Plaintiff was not entitled to a hearing.

They further argue that, even if it was a punishment, Mr. Jackson-Mackay was provided an adequate post-deprivation remedy. [ECF 12 pp. 10-12]

The Individual County Defendants next assert Mr. Jackson-Mackay argued his Equal Protection claim under the wrong constitutional amendment, but even if it was brought under the correct amendment, it would fail. They argue Mr. Jackson-Mackay's class-of-one claim fails because, in his Complaint, he pleads that he had a different interaction with Defendant McDonald than the other inmates in his unit and therefore he was not similarly situated. [ECF 12 pp. 12-15]

Next, the Individual County Defendants argue Defendant Harris cannot be held responsible for his subordinate's actions because there is no *respondeat superior* liability in § 1983 cases. [ECF 12 pp. 15- 16] They further contend Defendant Harris cannot be held liable because there was no underlying constitutional violation. [ECF 12 p. 16] Finally, the Individual County Defendants assert they are entitled to qualified immunity. [ECF 12 pp. 16-20]

Mr. Jackson-Mackay filed a Response to the Individual County Defendants' Motion to Dismiss. [ECF 18] He argues he stated a viable claim that he was denied due process regarding his good time credits because he was serving a state sentence at the same time he was a federal pretrial detainee. [ECF 18 pp. 2-3] He further asserts the defendants' conduct alone resulted in the deprivation of his good time. [ECF 18 p. 5]

Mr. Jackson-Mackay then implores the Court to understand that the seven-day kiosk restriction was not *de minimis*. Rather, he contends Defendant McDonald is a "loose cannon" and threatens, abuses, and dominates all aspects of jail management and

neither Defendant Russell nor Defendant Harris hold him accountable for his behavior. [ECF 18 p. 3] He further contends he lost kiosk privileges for eight days—not seven. [ECF 18 p. 4] He argues his due process claim is based both on the loss of kiosk privileges and the failure to provide a hearing on the disciplinary charge. [ECF 18 p. 6] He also contends the post-deprivation grievance process was not meaningful. [ECF 18 p. 7] Additionally, Mr. Jackson-Mackay argues he stated a plausible Equal Protection claim. He asserts that multiple inmates yelled at Defendant McDonald, but he was the only one punished. [ECF 18 p. 7] Finally, Mr. Jackson-Mackay argues the individual capacity defendants are not entitled to qualified immunity. [ECF 18 p. 4]

The Individual County Defendants replied and argued this Court should refuse to consider Mr. Jackson-Mackay's argument that he was a state prisoner at the time he was sanctioned and lost good time credits. [ECF 19 p. 2] They further assert Mr. Jackson-Mackay's response was untimely and therefore this Court should refuse to consider it. [ECF 19 p. 3] Further, they argue Mr. Jackson-Mackay pleaded a seven-day kiosk restriction and he cannot extend it to eight days in response to Defendants' Motion to Dismiss. [ECF 19 p. 5] They contend Mr. Jackson-Mackay exaggerates his restriction because the kiosk restriction did not include any restriction on non-electronic mail, or in-person visitation. [ECF 19 pp. 5-6] The Individual County Defendants argue this Court should not consider his argument that he was denied access to his attorney because he did not plead it in his Complaint. [ECF 19 p. 7]

## A. Consideration of documents outside the pleadings

Courts reviewing a motion to dismiss under Rule 12(b)(6) should, generally, "consider no evidence beyond the pleadings." *Hampton v. root9B Technologies*, 897 F.3d 1291, 1297 (10th Cir. 2018). The Individual Capacity Defendants attached a variety of documents to their motion to dismiss. [ECF 12 ex. 1-4] Ordinarily, to consider these exhibits, the Court would have to convert the motion to dismiss to a motion for summary judgment and give notice to the opposing party to present his own relevant evidence. *Lowe v. Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998). However, there are exceptions to the general rule for "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Hampton*, 897 F.3d at 1297. The documents included by the Individual Capacity Defendants are referenced by Mr. Jackson-Mackay in his complaint and are central to his claims. Thus, the Court can consider them when it rules on the Individual Capacity Defendants' motion to dismiss.

## B. Due Process, Equal Protection, Failure to Supervise

The Court analyzed each of Mr. Jackson-Mackay's three claims in its discussion of the Official Capacity Defendants' Motion to Dismiss. The same analysis applies to Mr. Jackson-Mackay's claims against Individual Capacity Defendants. First, as a convicted state prisoner, Mr. Jackson-Mackay is not subject to the pretrial detainee protections described in *Bell*. Thus, his Due Process claim fails because the disciplinary sanction applied does not implicated a protected liberty interest. *Supra* Section IA, pp. 11-12. Mr. Jackson-Mackay's assertion that he lost good time due to the sanction does

not implicate a liberty interest because Wyoming does not "create a liberty interest in earning good time credits." *Chapman*, 711 Fed.Appx at 458; *supra* Section IA, p. 12. And, the kiosk restriction is not the type of atypical or significant hardship that would implicate due process—especially considering Mr. Jackson-Mackay remained free to contact his friends, family, and attorney via the mail and in-person visitation. *Supra* Section IA, pp. 11-12. Second, Mr. Jackson-Mackay failed to state a plausible claim for a class-of-one Equal Protection violation because his Complaint demonstrates the other inmates in his unit were not similarly situated in every material respect. *Supra* Section IB pp. 13-15. Finally, because Mr. Jackson-Mackay has failed to state a plausible claim for a constitutional violation under either the Due Process or Equal Protection clauses, he cannot state a claim for failure to supervise. *Supra* Section IC pp. 15-16.

## C. Qualified Immunity

The Individual County Defendants assert alternatively that they are entitled to qualified immunity. "Qualified immunity protects officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the plaintiff must "show, first, 'the defendant's actions violated a constitutional or statutory right,' and, second, that the right was 'clearly established at the time of the conduct at issue.'" *Id.* (quoting *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008)). To show that a law was clearly established, "the plaintiff must point to Supreme Court or Tenth Circuit

precedents [o]n point, or to the clear weight of authority from other circuit courts deciding that the law was as the plaintiff maintains." *Thompson v. Ragland*, 23 F.4th 1252, 1255 (10th Cir. 2022).

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability,'" the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (internal quotations omitted). While qualified immunity is frequently "resolved at the summary judgement stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas*, 765 F.3d at 1194. "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendants to a more challenging standard of review than would apply on summary judgment." *Id.* (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (overruling risk on other grounds)) (internal quotation omitted).

Plaintiff does not provide any legal support demonstrating that the law was clearly established at the time of the alleged violations. Rather, he argues it is inappropriate to dispose of a case based on qualified immunity on a 12(b)(6) motion to dismiss. [ECF 18 p. 8] As already stated, courts can decide qualified immunity on a motion to dismiss. *Thomas*, 765 F.3d at 1194.

1. Due Process

Mr. Jackson-Mackay does not identify a single case that would demonstrate the law was clearly established at the time of the alleged violations. On the contrary, the cases the Court referenced in its due process analysis suggest that the law was clearly

21

established that the Defendants actions were constitutionally permissible. *Supra* Section 1A pp. 10-13. Thus, he has failed to plead facts showing that the individual county defendants "actions violated a constitutional or statutory right." *Thomas*, 765 F.3d at 1194 (quoting *Archuleta*, 523 F.3d at 1283) The Individual County Defendants are entitled to qualified immunity on Mr. Jackson-Mackay's Due Process claim.

### 2. Equal Protection

Likewise, Mr. Jackson-Mackay did not identify a single case to establish the defendants were on notice that their actions were unconstitutional. Rather, the face of his Complaint demonstrates he was not similarly situated in every material respect. Thus, the Individual County Defendants are entitled to qualified immunity on Mr. Jackson-Mackay's Equal Protection claim because he failed to plead facts showing a constitutional violation. *Thomas*, 765 F.3d at 1194.

### 3. Supervisory Liability

Mr. Jackson-Mackay failed to plead a plausible claim for a violation under either the Due Process or Equal Protection clauses against Defendant Harris or his subordinates. Therefore, Mr. Jackson-Mackay has failed to establish the first prong of the qualified immunity analysis and Defendant Harris is entitled to qualified immunity.

## CONCLUSION

Generally, a pro se plaintiff's claims should be dismissed without prejudice unless it is obvious from the facts alleged that he cannot prevail. *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010). Here, it is obvious from the facts alleged that Mr. Jackson-Mackay cannot prevail. Thus, the Court will dismiss his claims with prejudice.

**NOW, THEREFORE, IT IS ORDERED** the Official Capacity Defendants' Motion to Dismiss [ECF 9] is **GRANTED.**

**IT IS FURTHER ORDERED,** the Individual County Defendants' Motion to Dismiss [ECF 11] is **GRANTED.**

**IT IS FURTHER ORDERED**, Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.**

Dated this _14th_ day of November, 2022.

Alan B. Johnson
United States District Judge